This appeal emanates from a final judgment of the Columbiana County Court of Common Pleas. Appellant, Herman D. Jarvis, seeks the reversal of his conviction on one count of robbery, pursuant to R.C. 2911.02(A)(3).
Appellant's prosecution was based on an incident which occurred at the Kensington Dairy Bar on July 2, 1994. The Kensington Dairy Bar is essentially an ice cream store located on U.S. Route 30 in Columbiana County, Ohio. The business is housed in a small structure which looks similar in nature to a typical "Dairy Queen" building. That is, the front of the structure has small windows which a store clerk must open to take a patron's order and deliver the food. In making a purchase from the store, a patron never enters the structure; instead, the entire transaction is made through the windows. The sole door to the structure is located on the back side.
On the date in question, three teenaged girls, Emily Forbes, Amy Clapsaddle, and Nancy Cutler, were the only employees who worked at the Kensington Dairy Bar from 10:00 a.m. until 5:00 p.m. At approximately 4:15 p.m., Forbes and Clapsaddle were working near the front of the store, while Cutler was in the back preparing food. At that time, Clapsaddle, looking through the screen on the back door, saw a blue pickup truck drive into the back parking lot and stop near the door. After a few moments, the truck pulled away from the door, and Clapsaddle assumed that the vehicle had left the premises.
A few minutes later, a man opened the back door and walked into the store. This man was wearing a "Harley Davidson" T-shirt, dirty jeans, and a railroad engineer's cap. In addition to having long brown hair which extended to his shoulders, the man had a long beard which reached to his chest. In his right hand, the man was carrying a hard object which was covered by an orange towel.
Upon entering the store, the man grabbed Cutler's left arm and placed the covered object into the side of her body. After telling Cutler that he had a gun and would use it if necessary, the man asked her to tell him where the store's money was kept. When Cutler replied that the money was kept in the cash register near the front of the store, the man forced her to walk to that area of the structure.
Once they had arrived at the cash register, Cutler informed the man that she did not know how to open it. The man then asked both Forbes and Clapsaddle, who were standing in that general area, if they could open the cash register. Although Clapsaddle stated that she could not, Forbes was able to open the cash register. While still holding the covered object in his right hand, the man grabbed the majority of the money in the register and then walked out the back door.
Pursuant to the robber's instructions, the three girls did not immediately move after the robber had exited the building. However, in looking through the windows on the front of the store, two of the girls could see the robber leave the parking lot in the blue pickup truck. Then, once the robber had started to travel east on U.S. Route 30, the three girls made a number of telephone calls, including one to the Columbiana County Sheriff's Department. In informing the department of the robbery, one of the girls gave a description of the robber and the vehicle he was driving.
Two sheriff's deputies responded to the girls' call. While traveling west on U.S. Route 30, the first deputy saw a vehicle traveling in the opposite direction which looked similar to the pickup truck the girls had described. After the vehicle had passed him, the first deputy "radioed" this information to the second deputy, who was traveling in a separate cruiser approximately one quarter of a mile behind the first deputy on that same road. The first deputy then proceeded to the Kensington Dairy Bar and talked to the three girls.
Once the pickup truck had passed him, the second deputy turned his cruiser around and began to follow the truck. Upon seeing the commission of a minor traffic offense, the second deputy initiated a traffic stop. After waiting for a state highway patrolman to arrive at the scene, the second deputy had the driver of the truck exit his vehicle. The driver of the truck was appellant.
After assisting in appellant's arrest, the patrolman conducted an inventory search of the pickup truck. Although the patrolman did not find a gun in the vehicle, he did find a knife hanging below the dashboard. In addition, the patrolman found a pile of money lying behind the seat in the truck cab. It was later determined that the amount of money found in the truck was virtually identical to the amount of money taken from the Kensington Dairy Bar.
One day following the robbery, the second deputy found two towels lying beside U.S. Route 30 at a location which was between the Kensington Dairy Bar and the site of the arrest. One of the towels was similar to the cloth which the robber had used to cover the object in his right hand. The second towel was similar to the cloth which, according to the three girls, the robber had worn under his hat.
Based on the foregoing events, appellant was indicted on one count of robbery, an aggravated felony of the second degree. Initially, appellant accepted a plea agreement offered by the state. In February 1995, the trial court accepted the guilty plea and set the matter for sentencing. However, during the subsequent sentencing hearing in April 1995, appellant moved to withdraw the guilty plea. The trial court granted the motion, and the matter was finally set for a jury trial in September 1995.
As the primary basis for its case-in-chief, the state presented the testimony of the three girls who had been working at the Kensington Dairy Bar when the robbery took place. As part of their respective testimony, each girl expressly identified appellant as the robber. In addition, the state submitted evidence which tended to show that, one week after the robbery, each girl had been able to pick appellant's photograph out of six pictures in a "photo lineup."
In response to the state's case, appellant testified in his own behalf. After denying any involvement in the robbery, appellant gave the following version of the events of July 2, 1995: (1) early that afternoon, appellant agreed to give Slade Brandle, an old acquaintance, a ride from East Liverpool to Salem, Ohio; (2) after they had made a few stops, Brandle asked appellant to drive him to the Kensington Dairy Bar so that Brandle could apply for a job; (3) upon their arrival at the ice cream store at approximately 2:00 p.m., appellant ordered some food and waited in his truck for Brandle to conclude his business; (4) when Brandle came back to the truck, the two men drove to a bar which was located approximately three hundred yards from the store; (5) over the next two hours, appellant drank six beers; (6) at approximately 3:45 p.m., appellant noticed that Brandle was no longer in the bar; (7) at 4:15 p.m., Brandle walked back into the bar; (8) when appellant asked Brandle where he had been, Brandle told appellant to mind his own business; and (9) appellant then left the bar without Brandle and headed east on U.S. Route 30 until he was stopped by the sheriff's deputy.
Based upon the foregoing evidence, the jury returned a guilty verdict on the sole count of robbery. As a result, the trial court sentenced appellant to an indefinite term of seven to fifteen years in a state prison.
After appellant had filed a timely notice of appeal, his initial appellate counsel filed an "Anders" brief with this court, stating that his review of the trial record had failed to reveal any arguable error during the trial proceedings. Accordingly, in an opinion dated May 22, 1997, this court affirmed appellant's conviction on the grounds that his appeal had been frivolous.
However, on May 28, 1997, appellant moved for reconsideration on the basis that, prior to the issuance of our first opinion, his second appellate counsel had submitted a new brief which asserted two assignments of error. As our review of the appellate record shows that the new brief had been filed in accordance with a prior order of this court, we granted the motion for reconsideration.
In his new brief, appellant has advanced the following assignments of error for our consideration:
 "1. The defendant, Herman D. Jarvis, was denied his constitutional right to counsel due to the ineffective assistance of his counsel.
 "2. The trial court erred in not sustaining the defendant's request for a directed verdict since the evidence is against the manifest weight of the evidence."
Under his first assignment, appellant contends that he was denied his constitutional right to effective assistance of counsel because his trial attorney failed to interview and subpoena certain prospective witnesses whose testimony may have bolstered his version of the events. For example, appellant asserts that if his attorney had interviewed some of the other individuals who had been in the bar the afternoon of the robbery, they may have testified that it was Slade Brandle who had not been in the bar at the time of the incident.
It is well-established under Ohio law that, before a conviction will be reversed on the basis of ineffective assistance of trial counsel, a criminal defendant must show that: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced his defense to the point that he was denied a fair trial. As to the latter prong of this test, the Supreme Court of Ohio has stated that prejudice has been demonstrated when a reasonable probability exists that, but for the deficient performance, the outcome of the trial would have been different. State v. Loza (1994), 71 Ohio St.3d 61,83, citing Strickland v. Washington (1984), 466 U.S. 668.
In relation to the failure to interview and subpoena witnesses who may have offered exculpatory testimony, it has been held that such inaction on the part of a trial counsel is neglectful and can constitute deficient performance. State v.Akers (Apr. 4, 1997), Portage App. No. 95-P-0073, unreported, at 17. Nevertheless, it has been further held that a mere allegation that the testimony of a prospective witness may have been helpful is insufficient to establish the prejudice prong of the test for ineffective assistance. Id. That is, prejudice cannot be shown when the record before the appellate court contains no indication as to what the testimony of the prospective witnesses would have been. State v. Bleasdale
(Sept. 6, 1996), Ashtabula App. No. 95-A-0047, unreported, at 12. Under such circumstances, a claim of ineffective assistance could only be shown in a petition for postconviction relief. See State v. Cooperrider (1983), 4 Ohio St.3d 226.
In the instant case, the record before us does not contain any statement indicating that any of the bar patrons would have been able to verify appellant's assertions as to the absence of Slade Brandle from the bar at the exact time the robbery occurred. In addition, there is no indication in the record that any of the patrons could even verify that appellant or Brandle was in the bar during that general time period. As a result, even if the performance of the trial counsel was deficient in failing to interview these individuals, appellant cannot demonstrate that the outcome of his trial would have been any different.
Appellant further asserts under this assignment that his trial attorney's performance was substandard because he did not call Slade Brandle to testify. However, because the record before this court does not show what, if anything, Brandle would have said if he had been called, appellant again cannot establish any prejudice.
Finally, appellant correctly notes that, during the course of the trial, it was shown that one patron was at the Kensington Dairy Bar at the time of the robbery. It was also established that when this patron was subsequently asked to identify the robber, she was unable to pick appellant's photograph out of a "photo lineup." Based upon these facts, appellant argues that his trial attorney should have called the patron to testify at trial.
As to this point, this court would merely note that the record does not contain any indication concerning the reason why the patron was unable to identify appellant. If the inability was attributable to the fact that the patron was in a location which made it difficult for her to see the perpetrator, her testimony would not have been beneficial to appellant. If, on the other hand, the patron was able to see the perpetrator fully from outside the store, her testimony may have helped. In the absence of any statement as to how the patron would have testified on this point, we cannot say that the outcome of the trial would have been different in this case.
As appellant has not shown that he was prejudiced by the failure to call the persons in question, his first assignment of error lacks merit.
Under his second assignment, appellant submits that the jury verdict was against the manifest weight of the evidence because the state failed to establish that he had been the perpetrator of the robbery. In essence, appellant maintains that the testimony of the three female employees was not credible because: (1) the girls' respective descriptions of the perpetrator were inconsistent; and (2) he did not look like the person described by the girls.
As to the first aspect of appellant's argument, our review of the girls' testimony indicates that their respective descriptions were extremely consistent in relation to the perpetrator's clothing and general features. Specifically, each girl stated that the robber wore a "Harley Davidson" T-shirt, dirty jeans, boots, and a railroad engineer's cap. Each girl further testified that, besides having long brown hair which extended to his shoulders, the robber had facial hair which was so long that it rested on his chest.
In regard to the second aspect of the argument, this court would note that the state introduced a photograph of appellant which was taken immediately after his arrest. A review of the photograph readily shows that appellant's general features were consistent with the girls' descriptions.
To some extent, the girls' respective descriptions not only were inconsistent with each other, but were also inconsistent with appellant's actual features. For example, while two of the girls' description of the robber's height was consistent with appellant's actual height, the third girl did state that the robber was six inches shorter. Similarly, two of the girls disagreed as to whether the robber had a tattoo on his arm when, in actuality, appellant did not have a tattoo on that part of his physique.
After reviewing their testimony as a whole, this court concludes the discrepancies in the girls' descriptions were not so great as to render their testimony incredible. The jury could have readily found that the girls' inability to recall every detail of appellant's features was attributable to the fact that they had observed him while they were very frightened. The discrepancies were not so great as to lead to the finding that the girls' identification of appellant as the robber was not believable.
As a general proposition, determinations of witness credibility and the weight to be given evidence lie within the discretion of the trier of fact. State v. Davis (Dec. 31, 1998), Lake App. No. 97-L-246, unreported. In reviewing those determinations on appeal, an appellate court must defer to the trier of fact. State v. Duong (Dec. 11, 1998), Trumbull App. No. 98-T-0026, unreported. Accordingly, a criminal conviction can only be reversed on the basis of manifest weight when an appellate court concludes that the trier of fact lost its way in determining credibility and resolving conflicts in the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
Pursuant to the foregoing analysis, this court concludes that the jury in the case did not abuse its discretion in believing the identification testimony of the girls because the minor differences in their descriptions of the robber did not go to any major features of appellant's general appearance. Moreover, if believed, their testimony constituted substantial evidence which established each element of the offense of robbery beyond a reasonable doubt. Thus, as the jury verdict was not against the manifest weight of the evidence, appellant's second assignment is also lacking in merit.
The judgment of the trial court is affirmed.
 ---------------------------------- PRESIDING JUDGE DONALD R. FORD Eleventh District Court of Appeals Sitting by assignment
CHRISTLEY, J., Eleventh District Court Of Appeals, sitting by assignment,
NADER, J., Eleventh District Court Of Appeals, sitting by assignment,
Concur.